UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANIEL WILSON,

                        Plaintiff,

    v.                                            **DECISION AND ORDER**
                                                                           09-CV-732S
MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

    1.    Plaintiff Daniel Wilson challenges an Administrative Law Judge's ("ALJ") determination that his disability under the Social Security Act (the "Act") ended as of February 1, 2004. Plaintiff alleges that due to degenerative disc disease, he has been disabled since August 1, 2001, and his disability has not ended. He maintains that he is therefore entitled to continuing benefits.

    2.    Plaintiff filed an application for disability insurance benefits under Title II of the Act on December 31, 2003, alleging disability since September 7, 2001. The Commissioner of Social Security ("Commissioner") denied Plaintiff's initial application, and Plaintiff requested reconsideration of the decision. On September 21, 2004, the Commissioner determined that Plaintiff was disabled from August 1, 2001, through February 1, 2004, and awarded him benefits for that period. The Commissioner also determined, however, that as of February 1, 2004, Plaintiff's back condition had improved such that he could work and was therefore no longer disabled within the meaning of the Act. He therefore denied benefits from February 1, 2004, forward.

    Plaintiff subsequently requested a hearing before an ALJ to challenge the Commissioner's determination that his disability ended on February 1, 2004. Plaintiff

appeared with counsel and testified at a hearing before ALJ J. Robert Brown on July 14, 2006. The ALJ considered the case *de novo*, and on October 17, 2006, issued a decision upholding the Commissioner's finding that Plaintiff's disability ended as of February 1, 2004. On September 16, 2008, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on August 20, 2009, challenging Defendant's final decision.[1]

3.  On March 5, 2010, the Government and Plaintiff filed Cross Motions for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[2] The Government then filed a memorandum of law in response to Plaintiff's motion and in further support of its own motion on March 25, 2010. Plaintiff filed his reply memorandum of law on April 6, 2010.

4.  A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla" and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60,

---

[1] The ALJ's October 17, 2006 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[2] The Government and Plaintiff both filed memorandum of law in support of their motions for judgment on the pleadings ("Government's Mem." and "Pl.'s Mem.," respectively) on March 5, 2010.

2

62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. An individual's continued entitlement to disability benefits under the Social Security Act is conditioned on periodic review. 42 U.S.C. § 423(f). The Commissioner may terminate disbursement of benefits upon finding that the impairment is no longer disabling. Id. The Commissioner has established an eight-step evaluation process to determine whether an individual continues to be disabled, as defined under the Social Security Act. See 20 C.F.R. § 404.1594(f).

7. This eight-step process is detailed below:

First, the Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If so, the Commissioner will find that the disability ended. Id. If not, the Commissioner's review proceeds.

Second, the Commissioner determines whether the claimant's impairment or

combination of impairments meets or equals the severity of an impairment listed in Appendix 1. 20 C.F.R. § 404.1594(f)(2). If so, the claimant's disability is said to continue. Id. If not, the Commissioner's review proceeds.

Third, the Commissioner determines whether there has been medical improvement.[3] 20 C.F.R. § 404.1594(f)(3). If there is no decrease in medical severity, there is no medical improvement. Upon finding medical improvement, measured by a decrease in medical severity, the Commissioner's review continues.

Fourth, the Commissioner determines whether the medical improvement found in step three is related to the claimant's ability to do work in accordance with 20 C.F.R. §§ 404.1594(b)(1)-(4). Medical improvement is related to the ability to work if it results in an increase in the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1594(b)(3). If medical improvement is unrelated to the claimant's ability to work, the Commissioner proceeds to step five. Id. If the medical improvement is related to the claimant's ability to work the Commissioner proceeds to step six. Id.

Fifth, the Commissioner considers whether the exceptions to medical improvement listed in 20 C.F.R. §§ 404.1594(d) and (e) apply to the claimant's medical improvement. 20 C.F.R. § 404.1594(f)(5). If none apply, the claimant's disability continues. Id.

Sixth, if medical improvement is related to the claimant's ability to do work or one of the aforementioned exceptions applies, the Commissioner will determine whether the claimant's impairments are severe.[4] 20 C.F.R. § 404.1594(f)(6). When the evidence shows that all current impairments do not significantly limit the claimant's physical or mental abilities to perform basic work activities, the impairments are not severe and the claimant

---

[3] Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled ["comparison point decision"]." 20 C.F.R. § 404.1594(b)(1).

[4] An impairment or combination of impairments is severe if it "significantly limit[s] your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521.

4

will no longer be considered disabled. Id.

Seventh, if the claimant's impairments are severe, the Commissioner will assess the claimant's residual functional capacity based upon all current impairments and determine whether claimant is able to perform past work. 20 C.F.R. § 404.1594(f)(7). If capable of doing past work, the claimant is no longer disabled. Id.

Finally, if the claimant can no longer perform past work, the Commissioner must determine whether the claimant is capable of other work given her residual functional capacity assessment and her age, education, and previous work experience. 20 C.F.R. § 404.1594(f)(8). If the claimant is capable, her disability will have ended. Id. If the claimant is incapable, her disability is found to continue. Id.

8. Review of the claimant's disability may cease and benefits continued at any point if the Commissioner finds sufficient evidence that the claimant remains unable to engage in substantial gainful activity. 20 C.F.R. § 404.1594(f). The Commissioner retains the "burden of showing that a claimant has the ability to engage in substantial gainful activity" in disability termination proceedings. Glenn v. Shalala, 21 F.3d 983, 987 (10th Cir. 1994).

9. In this case, the ALJ made the following findings with regard to the eight-step process set forth above.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity through February 1, 2004, the date his disability ended. (R. at 18.)[5]

At step two, the ALJ determined that, as of February 1, 2004, Plaintiff did not have an impairment that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listing"). (R. at 19.) The ALJ rejected listing

---

[5] Citations to the underlying administrative record are designated as "R."

5

1.04 (disorders of the spine) because Plaintiff could ambulate and there was no medical evidence indicating motor, sensory, or reflex deficits. Id.

At step three, the ALJ determined that Plaintiff experienced medical improvement as of February 1, 2004. Id. The ALJ cited medical records indicating that acupuncture and other treatment modalities left Plaintiff "feeling better." Id.

At step four, the ALJ concluded that Plaintiff's medical improvement was related to his ability to work because it increased his residual functional capacity. (R. at 20.) Specifically, the ALJ noted that Plaintiff's residual functional capacity, as of February 1, 2004, was less restrictive than at the time of the comparison point decision. Id.

The ALJ then proceeded to step six because Plaintiff's medical improvement was related to his ability to work. At step six, the ALJ determined that, as of February 1, 2004, Plaintiff's back impairment was severe because it caused more than minimal limitations in his ability to perform basic work services. Id.

At step seven, the ALJ concluded that, as of February 1, 2004, Plaintiff retained the residual functional capacity for light work and could lift no more than twenty pounds at a time with frequent lifting or carrying objects weighing up to ten pounds. (R. at 19-20.) As such, Plaintiff lacked the residual functional capacity to perform his past relevant work as a park ranger.[6] Id.

At step eight, the ALJ found that despite his back impairment, Plaintiff was able to perform a significant number of jobs in the national economy as of February 1, 2004. (R. at 21.) Considering Plaintiff's age, high school education, non-transferrable job skills, work experience, and residual functional capacity in conjunction with the Medical-Vocational Guidelines, the ALJ determined that Plaintiff could perform the work of a machine tender,

---

[6] A park ranger is classified as medium level work. (R. at 20.)

6

general clerical worker, packer, cashier, receptionist, and security worker. (R. at 21.) Accordingly, the ALJ determined that Medical-Vocational Rule 201.28 directed a finding of "not disabled" and the ALJ concluded that Plaintiff's disability ended as of February 1, 2004. (R. at 22.)

10.  Plaintiff advances seven challenges to the ALJ's decision.  First, Plaintiff argues that the ALJ erred by not recontacting his treating physicians — an orthopedic surgeon, Richard D. Scheinberg, M.D., and a psychiatrist, Carl Granger, M.D. (Pl.'s Mem. pp. 5-8.)  In his April 25, 2003 report, Dr. Scheinberg opined that Plaintiff was "not able to return to gainful employment on a full time basis. . . ." (R. at 251.)  In his December 21, 2005 report, Dr. Granger stated, "I do not believe that [Plaintiff] is able to engage in substantial gainful activity." (R. at 356, 388.)

Recontacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. 20 C.F.R. § 404.1512(e).  Additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1512(e)(1); Rosa v. Callahan, 168 F.3d 72, 80 (2d Cir. 1999); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).  Nonetheless, even "if all of the evidence . . . including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, [the ALJ] will weigh all of the evidence and see whether [a disability determination can be made] based on the evidence [presented]." 20 C.F.R. § 404.1527(c)(2).

Applying these principles, this Court finds no error in the ALJ's decision not to recontact Drs. Scheinberg and Granger.  It is well-settled that the ultimate determination of whether a plaintiff meets the statutory definition of disability is reserved to the

7

Commissioner. See 20 C.F.R. 404.1527(e)(1). Moreover, an ALJ is not obligated to obtain additional information where there are no "obvious gaps in the administrative record and where the ALJ already possesses a 'complete medical history.'" Rosa, 168 F.3d at 79 n.5. It is clear that the record, spanning approximately 450 pages in length, contains sufficient evidence from which the ALJ could make a disability determination. In fact, when evaluating Plaintiff's physical limitations, the ALJ not only considered the opinions of Drs. Scheinberg and Granger, but also expressly referred to the opinions of two other physicians, orthopedist Jonathan M. Gurdin, M.D., and neurologist David G.N. Frecker, M.D., as well as assessments from three different Disability Determination Services ("DDS") physicians. (R. at 20.) Thus, in light of the foregoing, Plaintiff's first challenge is rejected.

11. Second, Plaintiff contends that the ALJ failed to give Drs. Scheinberg's and Granger's opinions "any weight whatsoever" in violation of SSR 96-2P. (Pl.'s Mem., pp. 8-10.) According to Plaintiff, the ALJ failed to "make specific findings regarding the weight he accorded to these treating medical providers' opinions in his decision . . . ." (Pl.'s Mem., p. 9.)

According to the "treating physician's rule,"[7] the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

---

[7] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

8

Generally, "the Social Security Administration is required to explain the weight it gives to the opinions of a treating physician." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999). Moreover, SSR 96-2p provides that:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of opinion; (4) consistency; (5) specialization of treating physician; and (6) other factors that are brought to the attention of the court. See de Roman, 2003 WL 21511160, at *9 (citing 20 C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). But a conclusory finding by a medical source that a claimant is "disabled" or "unable to work" does not mean that the Commissioner will determine the claimant is disabled within the meaning of the Act. See 20 C.F.R. § 404.1527(e).

This Court finds no error in the ALJ's treatment of Dr. Scheinberg and Granger's opinions. As an initial matter, the ALJ adopted Dr. Scheinberg's April 25, 2003 conclusion in holding that Plaintiff lacked "the residual functional capacity to perform less than a full range of sedentary work for the period from August 1, 2001 to February 1, 2004." (R. at 17-

18).[8]

The ALJ was also justified in refusing to extend controlling weight to Dr. Granger's opinion. Despite Plaintiff's contention, the ALJ did not cursorily reject this opinion. Dr. Granger was not Plaintiff's treating physician because he only examined Plaintiff once. See Monguer v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (expressing reluctance to find that a physician who examined claimant once or twice was a treating source). Moreover, even Dr. Granger himself recognized that his opinion could not be controlling, noting in his report that "I do not believe that Mr. Wilson's ability to engage in substantial gainful activity can be determined with the single examination that I performed." (R. at 356). Further, Dr. Granger's finding was entitled to little weight because it was not supported by diagnostic testing or other medical evidence in the record.[9] See R. 357-63. Finally, absent supporting medical evidence, Dr. Granger's statement constitutes an administrative finding reserved for the ALJ and is therefore not entitled to weight. See SSR 96-5p.

12. Third, Plaintiff argues that the ALJ's failure to defer to Drs. Scheinberg and Granger caused the ALJ to substitute his opinion for medical expert opinion. (Pl.'s Mem., pp. 17-19.) This characterization is without support. It is well-settled that the less consistent an opinion is with the record as a whole, the less weight it is to be given. See 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). In this Court's view, Dr. Scheinberg's April 25,

---

[8] The ALJ's finding that Plaintiff could perform light, unskilled work is also consistent with James L. Strait's, M.D., F.A.C.S., February 20, 2004 Independent Medical Examination that found that Plaintiff could not "perform the bending and lifting activities required in his job as a Park Ranger II." (R. at 280.)

[9] Plaintiff argues that Dr. Granger's report of the patient's functional status constitutes diagnostic testing or medical evidence. (R. at 357, 364.) Close examination reveals that this information was merely Plaintiff's own description of his functional status as communicated to Dr. Granger via "a standardized questionnaire covering physical functioning . . . ." (R. at 364.)

2003 finding is inconsistent with the medical record as of February 2004. First, Dr. Scheinberg's finding conflicts with the findings of Drs. Gurdin, Frecker, clinical psychologist Paul R. Martin, Ph.D., and psychiatrist Catherine S. Brennan, M.D. These clinicians' independent assessments support the ALJ's determination that Plaintiff had the residual functional capacity to perform a range of light, unskilled work. See R. at 286, 292-93, 295, 333. The ALJ cited Dr. Gurdin's May 16, 2004 finding that Plaintiff "could probably lift 50 pounds on a one-time basis, 25 to 30 pounds occasionally and 15 pounds more frequently. He appears capable of being on his feet for 1½ to 2 hours at a time and for 5 or 6 hours. . . ." (R. at 18, 295). On March 15, 2004, Dr. Frecker determined that Plaintiff was "employable" subject to certain limitations (e.g., Plaintiff avoid lifting more than twenty pounds, be permitted to bend often and change positions frequently).[10] (R. at 286.)

The ALJ's determination is also buttressed by three different DDS physicians' Residual Functional Capacity Assessments. (R. at 20.) The June 17, 2004 Assessment found Plaintiff capable of occasionally lifting twenty pounds, frequently lifting ten pounds, standing and/or walking for about six hours of an eight-hour work day. (R. at 20, 301.) The August 27, 2004 Assessment also found Plaintiff capable of occasionally lifting twenty pounds, frequently lifting ten pounds, standing and/or walking for about six hours of an eight-hour work day. (R. at 20, 344.) The third Assessment, also dated August 27, 2004, provided a more restrictive view of Plaintiff's residual functional capacity. (R. at 20.) Plaintiff's exertional limitations consisted of occasionally lifting ten pounds and frequently lifting less than ten pounds (R. at 20, 335-41.) The third DDS physician also concluded

---

[10] The ALJ incorrectly attributed this report to clinical psychologist Paul Martin, Ph.D., and referred to it as Exhibit 14F, when in fact it is Exhibit 16F in the record.

that Plaintiff was capable of standing for two hours in a four-hour work day and needed to be able to change positions at his workstation. (R. at 336.) Thus, in light of the foregoing, Plaintiff's third challenge is rejected.

13. Fourth, Plaintiff argues that the ALJ failed to properly assess his subjective complaints. (Pl.'s Mem., pp. 12-16.) In support, Plaintiff argues that his complaints should have been given "great weight," because they are supported by the objective medical evidence of record. Plaintiff further contends that the ALJ's decision is "void of any meaningful discussion of the factors cited [in SSR 96-7p]." (Pl.'s Mem., p. 15.)

Credibility determinations are generally reserved to the Commissioner, not the reviewing court. Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984). In making a credibility determination, SSR 96-7p sets forth a number of factors for the ALJ to consider, including the plaintiff's daily activities, factors that precipitate and aggravate the symptoms, any medication taken to alleviate the pain symptoms, and any measures used to relieve the pain. SSR 96-7p.

This Court finds that the ALJ's determination that Plaintiff's statements regarding the pain and limiting effects of his condition were not "entirely credible" is supported by substantial evidence. (R. at 19.) Plaintiff's contention that Dr. Scheinberg's April 25, 2003 report corroborates his subjective complaints is mistaken. Dr. Scheinberg's statement merely reflects Plaintiff's condition in 2003, when he was disabled. It does not address his back condition as of February 2004.

To support his credibility finding, the ALJ cited medical records indicating that acupuncture treatments improved Plaintiff's condition by 60%. (R. at 19, 309.) Moreover,

as of July 9, 2004, Plaintiff felt the "best and strongest he has felt in over a year."[11] (R. at 19, 309.) The ALJ also noted that Plaintiff underwent pool therapy.[12] (R. at 19, 277.) Additionally, the ALJ noted Plaintiff's ability to engage in "normal activities of daily living and personal care." (R. at 19.) For example, Plaintiff admitted to taking his daughter to school, completing "some cleaning," including dusting, limited vacuuming and laundry. (R. at 16-17, 91, 117, 277.) In these respects, the ALJ complied with SSR 96-7p because he addressed Plaintiff's treatment modalities (besides medication) and daily activities. Thus, for the foregoing reasons, Plaintiff's fourth challenge is rejected.

14. Fifth, Plaintiff argues that the ALJ erred by not considering his "good work history." (Pl.'s Mem., pp. 19-20.) "A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) (citing Singletary v. Sec'y of Health, Educ. and Welfare, 623 F.2d 217, 219 (2d Cir. 1980); see also Maggio v. Heckler, 588 F. Supp. 1243, 1246 (W.D.N.Y. 1984); Patterson v. Chater, 978 F. Supp. 514, 519 (S.D.N.Y. 1997); Nelson v. Barnhart, No. 01 Civ. 3671, 2003 WL 1872711, at *7 (S.D.N.Y. April 10, 2003). This is because a claimant with an established history of employment is unlikely to be "feigning disability." Patterson, 978 F. Supp. at 519.

But the ALJ's failure to take account of a plaintiff's good work history does not necessarily require remand where the credibility assessment is supported by substantial

---

[11] In his decision, the ALJ incorrectly referred to the date of this report as "July 1994" (R. at 19.)

[12] Plaintiff's credibility is further diminished by his contradictory statements in the record. For example, Plaintiff discussed undergoing pool therapy according to Dr. James L. Strait's, M.D., February 20, 2004 report. (R. at 277). During the July 14, 2006 hearing, however, Plaintiff stated "I never did any pool therapy." (R. at 424).

13

evidence. See Messina v. Astrue, No. 09 Civ. 2509, 2009 WL 4930811, at *7 (S.D.N.Y. Dec. 21, 2009); see also Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) (when the evidence on record permits a reviewing court to discern the rationale behind the ALJ's decision, "we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.") Ultimately, work history is "just one of many factors" appropriately considered in assessing credibility. Schaal, 134 F.3d at 502.

At the hearing, the ALJ recognized Plaintiff's "excellent work record." (R. at 442.) Plaintiff argues that the ALJ erred as a matter of law by not discussing his work history in his written decision. This argument overlooks the fact that the ALJ was aware of and considered Plaintiff's work history, as reflected in his comments to Plaintiff at the conclusion of the hearing, and that the credibility determination was firmly supported by substantial evidence.[13] More specifically, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairment were "not entirely credible" because they were contradicted by his other statements, as well as objective medical evidence. (R. at 20-21.) For example, Plaintiff stated, "I believe I - - not to the same job I had, but I could go back to work, yes" at his July 14, 2006 hearing. (R. at 424.) At the same time, Plaintiff admitted to participating in vocational rehabilitation training in order to become a gunsmith. (R. at 425-26.) As previously discussed, the ALJ relied upon five medical sources that independently supported the ALJ's determination that Plaintiff retained the residual functional capacity to engage in light work. (R. at 20, 295,

---

[13] There is also evidence that Plaintiff worked during the time he received disability benefits. (R. at 22.) For this reason, the ALJ recommended that the "effectuating authority determine whether any overpayment was made during the period the claimant was found to be disabled." Id.

14

302, 336, 344.) Ultimately, the ALJ's determination that Plaintiff's statements regarding pain and limitations were not "entirely credible" is so strongly supported by the record that the outcome would not have been affected had he explicitly credited Plaintiff's work history. Accordingly, Plaintiff's fifth challenge is rejected.

15. For the same reasons, this Court rejects Plaintiff's sixth argument, which is that the ALJ ignored "lay evidence of record." (Pl.'s Mem., pp. 19-20.) Plaintiff maintains that the ALJ failed to consider "third-party narratives" pertaining to his condition as described by his wife and the interviewer who completed his disability application. (Pl.'s Mem., p. 19; R. at 82, 105-113.) As discussed above, however, this Court finds that the ALJ properly examined all of the evidence of record, including evidence from "third parties." This argument is therefore unpersuasive.

16. Lastly, Plaintiff argues that his daily activities are consistent with a finding that he is disabled. (Pl.'s Mem., pp. 16-17.) Plaintiff maintains that his "limited performance of some activities does not rise to a level comparable with full-time sustained employment." (Pl.'s Mem., p. 17.)

This argument is unpersuasive. As an initial matter, this Court disagrees with Plaintiff's contention that his ability to engage in "light housework" is necessarily inconsistent with the light, unskilled work prescribed by the ALJ. (R. at 16-17, 91, 117, 277.) But even if this Court agreed with Plaintiff, it would not affect the outcome of the ALJ's disability determination because the ALJ not only relied upon Plaintiff's performance of certain activities, but also relied on the medical evidence of record. And after weighing all of the evidence in its totality, the ALJ concluded that Plaintiff was not disabled. Thus,

Plaintiff's final challenge is denied.

17. After carefully examining the administrative record, including the objective medical evidence and medical opinions rendered therefrom, this Court finds that substantial evidence supports the ALJ's decision,. The ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in determining that Plaintiff is not disabled within the meaning of the Act. Accordingly, finding no reversible error and further finding that substantial evidence supports the ALJ's decision, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Date: July 15, 2010
       Buffalo, New York

                                            /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                                  Chief Judge
                                        United States District Court